G. H. McLaughlin & Co., plaintiffs in error, vs. Michael O'Dowd, defendant in error.

[1.] Under the Ordinance of the Convention, in adjusting the equities of the parties in contracts and settlements not yet executed, and payable in Confederate currency, the jury are not bound to reduce the Confederate money to its specie value. The Convention wisely gave the jury a wide latitude of discretion.

[2.] The Court can discover no distinct legal ground for setting aside the verdict in this case.

Assumpsit. In the City Court of Augusta. Tried before Judge Snead. May Term, 1866.

This was an action by Gerard H. McLaughlin and Joseph O. Matthewson, as copartners, using the name and style of G. H. McLaughlin & Co., against Michael O'Dowd, on a promissory note.

The defendant pleaded :

1. Non-assumpsit.

2. That the note was made in reference to, and intended to be paid in Treasury notes of the Confederate States.

3. That it was payable in that currency *only*, and that plaintiffs concealed the note, and neglected and refused to receive payment in such currency, whereby defendant lost the amount thereof in Treasury notes of the Confederate States, by reason of the same becoming valueless on his hands.

4. That the term "dollars," as used in the note, did not mean specie or "Greenbacks," but treasury notes of the Confederate States.

5. That the note was given for tobacco of very inferior quality, not worth the price agreed to be given for it in treasury notes of the Confederate States at the time of purchase, but only worth such price after the currency had become greatly depreciated, and that to obtain such price the defendant was obliged to hold the tobacco until the depreciation had taken place.

McLaughlin & Co. vs. O'Dowd.

6. Set off, as follows:

| | | | | | |
|---|---|---|---|---|---|
| 1862. | July | 21. | To 10 lbs. spice ......@    50.............. | | 5.00 |
| | " | " | " 20 "   pepper ....@ 1.50.............. | | 30.00 |
| | " | " | " 4½ " cinnamon.. "    90.............. | | 4.05 |
| | " | " | " Bag.................................. | | 30 |
| | Aug. | 2. | " 1 Box tobacco, 100 @ 1.00........ ..... | | 100.00 |
| | " | " | " 1 Half box "    50 "  90.............. | | 45.00 |
| | Oct. | 1. | " 11 Sacks rye, 1072 lbs. 19 1-7 bus. @5.50. | | 105.29 |
| | Nov. | 7. | " 1 Horse...................... .......... | | 150.00 |
| | Decr. | 9. | " 17 Boxes tallow candles, 510 lbs. @ 1.15. | | 586.50 |
| | " | " | " 2   "    "    " 40 each, 80 lbs. [@ 1.15........ | | 92.00 |
| | " | " | " 2   "    "    " 40 each, 80 lbs. [@ 1.15........ | | 92.00 |
| | " | 12 | " 60  "    "    " 1252 lbs. @ 1.15 | | 1,439.80 |
| 1863. | Jany. | 6. | " 24 Sacks corn, 51 35-100 bus. @ 1.75 .... | | 90.34 |
| | " | " | " Drayage........................... | | 1.20 |
| | " | 13. | " 10 Sacks corn, 18 22-100 bus. @ 1.75...... | | 32.19 |
| | " | " | " Drayage.............................. | | 60 |
| | March | 2. | " 10 Sacks corn, 19 19-100 bus. " 2.00..... | | 38.66 |
| | " | 10. | " 10 Boxes Diamond Tobacco, 963 lbs. @ 1.25............................... | | 1,203.75 |
| | " | " | " 19 Boxes Swan Tobacco, 1969 lbs. @ 1,10 | | 2,165.90 |
| | " | " | " 9 Boxes B Tobacco,.902 lbs. @ 1.40..... | | 1,262.80 |
| 1864. | Decr. | 23. | " 2 Bbls. sugar......431 "  " 8.00...... | | 3,448.00 |
| | | | | | $10,893.38 |

At the trial, the evidence introduced was as follows:

*Evidence for Plaintiff.*

1. The note sued on, of which the following is a copy:

$10,000.                          AUGUSTA, August 22, 1862.

Forty days after date I promise to pay to the order of G. H. McLaughlin & Co., ten thousand dollars, at either bank in this city.  Value received.

                                    M. O'DOWD.

2. Barber's tables, admitted by consent to show the value of Confederate money during the war, of which the following is a copy:

McLaughlin & Co. vs. O'Dowd.

## CONFEDERATE MONEY.

As a matter of curiosity, we give the following table, showing the prices of Confederate currency in Augusta, Georgia, at various times from the beginning to the close of the war. The record was kept by a broker doing business in that city.

| 1861. | *Gold Premium.* | | *For $1 in Gold.* |
|---|---|---|---|
| January 1. | 5 | December 15 | $21 00 |
| July 1 | 10 | **1864.** | |
| October 1 | 12 | January 1 | 21 00 |
| October 15 | 15 | January 15 | 20 00 |
| December 1 | 20 | February 1 | 20 00 |
| December 15 | 30 | February 15 | 21 00 |
| **1862.** | | March 1 | 26 00 |
| January 1 | 20 | March 15 | 20 00 |
| January 15 | 20 | April 1 | 19 00 |
| February 1 | 25 | April 15 | 21 00 |
| February 15 | 40 | May 1 | 20 00 |
| March 1 | 50 | May 15 | 18 00 |
| March 15 | 60 | June 1 to July 15 | 18 00 |
| April 1 | 75 | July 15 to August 15 | 20 00 |
| April 15 | 85 | August 15 | 22 00 |
| May 1 | 90 | September 1 | 20 50 |
| May 15 | 95 | September 15 | 22 50 |
| June 1 | 95 | October 1 | 27 00 |
| | *For $1 in Gold.* | October 15 | 25 00 |
| June 15 | $2 00 | November 1 | 26 00 |
| August 1 | 2 20 | November 15 | 28 00 |
| September 1 | 2 50 | December 1 | 32 00 |
| November 1 | 3 00 | December 15 | 35 00 |
| **1863.** | | December 31 | 50 00 |
| February 1 | 3 10 | **1865.** | |
| March 1 | 3 25 | January 1 | 60 00 |
| March 15 | 5 00 | January 15 | 65 00 |
| May 15 | 6 00 | February 1 | 50 00 |
| June 1 | 6 50 | February 15 | 46 00 |
| June 15 | 7 50 | March 1 | 55 00 |
| July 1 | 8 00 | March 15 | 57 00 |
| July 15 | 10 00 | April 1 | 70 00 |
| August 1 | 14 00 | April 15 | 80 00 |
| August 15 | 15 00 | April 20 | 100 00 |
| September 1 | 14 00 | April 26 | 200 00 |
| September 15 | 14 00 | April 27 | 300 00 |
| October 1 | 13 00 | April 28 | 500 00 |
| October 15 | 12 50 | April 29 | 800 00 |
| November 1 | 13 00 | April 30 | 1,000 00 |
| November 15 | 15 50 | May 1 | 1,200 00 |
| December 1 | 20 00 | Correct—J. C. Barber. | |

*Evidence for Defendant.*

1st. The admission that the goods set forth in the plea of set off, were sold to plaintiffs by defendant at the time, and for the price stated in Confederate currency then prevailing.

2. *Jerry Reed* testified as follows: In July, 1862, was in defendant's employ. Continued with him three years. Defendant bought lot of tobacco from plaintiffs, and recognize the bill shown. Tobacco was of inferior quality, and funky within ten days after received in store. It remained on hand a long time. Defendant shipped large quantity to Charleston. It was offered for sale at seventy-five and sixty-five cents for long time in Augusta; never could get cost for it. In the meantime, money depreciated : if tobacco had been good it would have advanced in price. Was not present at purchase or settlement. Defendant was a large dealer in tobacco about that time. Made large sums of money. No complaint was ever made of the quality of the tobacco purchased from plaintiffs, nor reclamation made, to witness's knowledge. In witness's opinion, tobacco was worth only seventy cents per pound at the time of purchase.

3. The original bill of the purchase of tobacco from G. H. McLaughlin & Co., with the note paid by O'Dowd, copies of which are annexed.

4. *Sydney Simmons*, a juror, testified as follows: Was paying-teller of Georgia Railroad Bank in 1862, 1863, 1864, and 1865. Confederate money was in general use during these years. Don't recognize note offered by defendant's counsel. The stamp of payment was made by Mr. Jones, receiving-teller of the bank.

The note sued on and offered by plaintiff's attorney was put in the said bank for collection, and not paid.

5. *C. G. Butler*—Was present at conversation between Mathewson and O'Dowd after surrender of the Confederate forces. It was at O'Dowd's door, about one year ago. Mathewson came in with a statement. O'Dowd said he did not

owe him; said his account was more than Mathewson's. Mathewson's statement was reduced to specie basis, and he claimed that O'Dowd owed him. O'Dowd said he had gone to pay note, and Mathewson said the note was mislaid or lost. Mathewson did not deny this statement of O'Dowd.

Mathewson went to O'Dowd, claiming that O'Dowd owed him. Don't know that Mathewson expressed himself satisfied. Don't know that he heard O'Dowd's remark about going to pay the note. Supposed Mathewson heard the remark, as witness heard it distinctly.

AUGUSTA, August 2d, 1862.

*Mr. M. O'Dowd,*

Bought of G. H. McLAUGHLIN & Co.

68¾ Boxes "Emma Hughes," 7107@1.00
132   Boxes "W. M. Russell," 6823
35¾ Boxes      "       "       3692
214   Boxes "Tea Brand,"   21130@1.00

|     |                                              |           |
| --- | -------------------------------------------- | --------- |
|     |                                              | $37,700.50 |
| Cr. | By cash....  ...............................  | 10,000.00 |
|     |                                              | 27,700.50 |
|     | By account sales tobacco,.....................| 3,309.52  |
|     |                                              | 24,390.98 |
|     | Interest from July 22d to date, 53 days,..........| 107.39 |
|     | "       "       "       "    73 days,..........| 145.75  |
|     |                                              | 24,644.12 |
|     | By two notes at 20 and 40 days, August 22d,.....| 20,000.00 |
|     |                                              | 4,044.12  |

Received payment Aug. 22, 1862.

G. H. McLAUGHLIN & Co.,
per J. WADAN.

$10,000.              AUGUSTA, August 22d, 1862.

Twenty days after date, I promise to pay to the order of G. H. McLaughlin & Co., ten thousand dollars, at either Bank in this city. Value received.        M. O'DOWD.

*Marked on the face*—"G. R. R. & B. Co: Paid, R. T. Augusta."

The jury, composed, as the record states, mostly of merchants familiar with such transactions, found for the defendant three dollars and fifty-two cents. And the plaintiffs moved for a new trial on the following grounds:

1. Because the verdict was contrary to the charge of the Court, "that the mutual demands of the plaintiffs and the defendant must be reduced to some well-known standard of value which would be equally fair to both parties; and that if the value of specie in Confederate money be such a standard, and the jury adopt it, then a verdict must be for that party to whom a balance may be due."

2. Because the verdict was contrary to the charge, "that if in mercantile dealings between merchants in the city of Augusta during the years 1862, 1863, 1864, and 1865, the customary standard of determining the relative value of articles of merchandize, was the price of specie, the jury should adopt the same as the standard in this case."

3. Because the verdict was contrary to the charge, "that no reclamation as to the character of goods sold can be allowed, unless made within a reasonable time; and that if nearly four years elapsed before such is made, and in the interim frequent transactions and payments are had between the parties, the law presumes that the same did not exist."

4. Because the verdict was contrary to the charge, "that a good standard of value was the price of specie, and that the demands of both parties should be reduced to that standard, or some other equally fair for arriving at the principles of justice and equity between the parties, and a balance struck in favor of the party entitled thereto."

5. Because the verdict was contrary to the weight of evidence and the principles of justice and equity.

6. Because the verdict was contrary to the principles of equity between the parties.

The Court refused a new trial; and that is complained of as error.

MILLER, for plaintiffs in error.

WALTON, for defendant.

LUMPKIN, C. J.

The Judge below, who we know to be a most careful and pains-taking officer, after witnessing the investigation and carefully scrutinizing the complicated transactions between these parties, has felt it to be his duty to overrule the motion for a new trial. Do we feel constrained under the circumstances to reverse him?

Section 2d of the ordinances of the Convention which met at Milledgeville, October and November, 1865, enacts as follows: "And be it further ordained, that all contracts made between the 1st of June, 1861, and the 1st of June, 1865, whether expressed in writing or implied, or existing in parol, and not yet executed, shall receive an equitable construction; and either party in any suit for the enforcement of any such contract, may, upon the trial, give in evidence the consideration and the value thereof at any time, and the intention of the parties as to the particular currency in which payment was to be made and the value of such currency at any time, and the verdict and judgment rendered, shall be on principles of equity: *Provided*, that contracts executed within the time specified and which were simply in renewal of original contracts made before the said 1st day of June, shall stand upon the footing of contracts executed before hostilities commenced. (*Pamphlet Journal of Proceedings of People of Georgia, page* 233.)

Now, under the rule thus prescribed, the jury, composed of the most intelligent bankers and merchants of the city of Augusta,—and it is admitted everywhere that this is one of the most intelligent business communties in this or any other country,—have carefully considered the evidence and rendered the verdict which they have. Has any principle of law been violated? They had the right, not only to reduce the respective demands of the parties to a specie basis, but also to go into an examination of the consideration for which the note was given; how much ought to be deducted from the

amount of said note, by the unsoundness of the tobacco for which the note was given; what is the usage of trade in the community where the parties resided as it respects settlements between merchants, etc.: these and all other matters which affected the equity of the parties, the jury had a right to inquire into, and to find their verdict accordingly; and this they have done.

These parties had heavy transactions with each other, amounting to some forty thousand dollars and upwards. It required an extensive and accurate investigation to adjust their mutual dealings. The defendant O'Dowd's set off exceeded the note of the plaintiffs by some eight hundred dollars, which, reduced to a gold standard at the time, is the verdict which the jury seem to have rendered.

Counsel for McLaughlin & Co. have read to us a statute in *Crawford and Marbury's Digest*, passed at the close of the continental war, by which all contracts are required to be reduced to a specie basis, and the settlement made accordingly. And I will not undertake to say that this legislation was not just at the time. But that it would be a proper standard now, it requires no degree of experience in business, to satisfy any one to the contrary. Our Convention has acted more wisely under the circumstances, past and present, by which we are surrounded.

Let the judgment below be affirmed.